UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN M. FEROLITO,

       Plaintiff,    <u>MEMORANDUM AND ORDER</u>

 -against-        CV 12-1557 (LDW) (ARL)

DAVID K. MENASHI,

       Defendant.
----------------------------------------------------------X
Wexler, J.

 Plaintiff John M. Ferolito ("Ferolito") brings this diversity action against defendant David K. Menashi ("Menashi") for fraud, breach of fiduciary duty, and breach of contract. Menashi moves under Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) to dismiss or stay this action. Ferolito opposes the motion.

## I. <u>BACKGROUND</u>

 For purposes of this decision, the relevant background can be summarized as follows:

A. <u>The AriZona Entities</u>

 Ferolito and non-party Domenick Vultaggio ("Vultaggio") are the co-founders and co-owners of a group of companies that produce, bottle, market, and sell the AriZona Iced Tea brand of products, along with other related brands ("AriZona" or "AriZona Entities"). Vultaggio and Ferolito entered into numerous agreements related to the management of the AriZona Entities, including, in 1998, an "Owners' Agreement."

B. <u>Menashi and His Former Accounting Firm</u>

Menashi is a certified public accountant and a former member of the accounting firm of Maier, Markey, and Menashi LLP ("MMM"). In 1989, Vultaggio and Ferolito retained MMM for financial consulting and accounting services for a number of their businesses, including various AriZona Entities. At the time Menashi performed services for the AriZona Entities, he also performed certain personal advisory, accounting, and financial services for Ferolito, such as asset management and tax planning. He later provided financial and accounting services to various non-AriZona businesses owned by Ferolito. In 2005 or 2006, Menashi became CEO of Beverage Marketing USA, Inc. ("BMU") – the primary company of the AriZona Entities – but remained a partner of MMM until the end of 2007. By 2007, Menashi no longer performed services for Ferolito or any of his various non-AriZona business. Menashi remains the CEO of BMU and other AriZona Entities.

C. <u>Ferolito's Federal and State Actions</u>

Since February 2008, Ferolito has filed various actions in state supreme court in New York County and Nassau County against, among others, Menashi, Vultaggio, and the AriZona Entities (collectively, the "State Actions"). In February 2008, Ferolito filed the first of these actions in New York County Supreme Court. *See Ferolito, et al. v. Vultaggio, et al.*, Nos. 590967/08 & 600396/08 (the "New York County Action"). As amended in October 2008, the N.Y County Action sought, *inter alia*, to invalidate certain

provisions of the Owners' Agreement.

In June 2008, Ferolito, through JMF Consulting Group II, Inc. ("JMF"), filed an action against BMU in Nassau County Supreme Court for repayment of certain loans he made to BMU. *See JMF Consulting Group II, Inc. v. Beverage Marketing USA, Inc.*, No. 011005/08 (the "Nassau County Action"). In March 2009, BMU asserted counterclaims against JMF and third-party claims against Ferolito for breach of fiduciary duty, breach of contract, unjust enrichment, and declaratory judgment. By order dated September 30, 2009, Ferolito's claims were discontinued, but BMU's counterclaims and third-party claims remained.

In October 2010, Ferolito filed a petition in Nassau County Supreme Court under New York Business Corporation Law ("BCL") § 1104-a to dissolve BMU. *See In re Dissolution of Beverage Mktg. USA, Inc.*, No. 018945/10 (the "BCL Action"). By order dated November 4, 2010, New York County Supreme Court Justice Martin Shulman transferred the BCL Action to New York County and consolidated that action with the New York County Action. After the consolidation, Ferolito amended the petition in the New York County Action, asserting "oppression" and "fraudulent conduct" by management, including Vultaggio and Menashi, as grounds for dissolution. In particular, the amended petition alleges, *inter alia*, that beginning in 2007, Vultaggio began scheduling meetings with close associates at BMU to address and implement a strategy to exclude Ferolito from the corporate affairs of the Arizona Entities and to induce him to

sell his shares to Vultaggio at a price below fair value. As part of the scheme, Vultaggio and his associates allegedly discussed "choking off" Ferolito by denying shareholder distributions. Vultaggio and Menashi – as Ferolito's personal accountant – knew the Ferolito could not "survive" without the distributions because of "significant cash needs for his other business ventures and investments." Vultaggio and his associates purportedly agreed to a fictitious claim that BMU was experiencing a "cash crunch" to justify the decision to suspend shareholder distributions.

In January 2011, Ferolito filed another action in New York County Supreme Court, this one against Vultaggio and Menashi, and amended that action on February 1, 2011 to add a common-law dissolution claim by the John Ferolito Jr. Trust (the "Ferolito Trust"). *See Ferolito v. Vultaggio, et al.*, No. 100568/11 (the "Derivative Action"). The Derivative Action alleges breach of fiduciary duty, officer/director misconduct under BCL § 720, and common-law dissolution (based on, *inter alia*, the alleged breach of fiduciary duties and "illegal, fraudulent and oppressive conduct"). The Derivative Action is grounded in the same scheme against Ferolito that Ferolito detailed in the amended petition in the New York County Action. Specifically, the Derivative Action alleges, *inter alia*, that in August 2007, Vultaggio began scheduling meetings with, among others, Menashi and officers of the AriZona Entities to address and implement a scheme against Ferolito to deprive Ferolito of his rights and interest in the AriZona Entities. As part of the scheme, Vultaggio and Menashi decided to put severe financial pressure on Ferolito

by depriving Ferolito of millions of dollars in shareholder distributions from the AriZona Entities, money that Menashi knew that Ferolito needed for personal and business purposes.  Vultaggio, Menashi, and others feigned a "cash crunch" for the AriZona Entities to serve as a pretext for stopping the distributions.  By their scheme, Menashi and the other defendants breached their fiduciary duties to Ferolito, BMU (the AriZona Entities), and the Ferolito Trust.  For his part in the scheme, Menashi allegedly received over $7 million in payments from BMU over the course of two years, whereas before agreeing to the scheme he had received less than $350,000 per year in payments from BMU.

On March 30, 2012, Ferolito filed the original complaint in this diversity action against Menashi (the "Federal Action").  Ferolito did not serve the original complaint; rather, he served an amended complaint on April 30, 2012.  In the amended complaint, Ferolito asserts claims against Menashi for fraud, breach of fiduciary duty, and breach of contract.  In this respect, Ferolito alleges that Menashi acted as Ferolito's trusted financial advisor, through which Menashi became privy to Ferolito's highly confidential business and personal financial information.  According to Ferolito, Menashi disclosed Ferolito's confidential information to Vultaggio and other officers and employees of the AriZona Entities as part of a conspiracy to defraud Ferolito out of his rights in the AriZona Entities.  To effectuate the scheme, the conspirators feigned a "cash crunch" for the AriZona Entities to serve as a pretext for depriving Ferolito of millions of dollars in

shareholder distributions from the AriZona Entities – money that Menashi knew that Ferolito needed for personal and business purposes. By participating in the fraud, Menashi allegedly breached his fiduciary and contractual duties to Ferolito.

On March 30, 2012, Ferolito also filed a complaint in Nassau County Supreme Court seeking dissolution of four additional AriZona Entities. *See Ferolito, et al. v. AriZona Beverages USA LLC, et al.*, No. 004058/12.

According to Menashi, since 2008, there has been substantial and on-going pretrial, trial, and appellate proceedings in the State Actions, including: depositions of ten individuals, including Menashi, Ferolito, and Vultaggio, with four continuing over multiple days; production of hundreds of thousands of pages of documents and financial data; numerous motions, court conferences, and oral arguments; and numerous court orders or decisions on substantive, procedural, and discovery-related issues, including several appellate decisions stemming from a number of appeals to the First and Second Departments. Proceedings in the State Actions included a non-jury trial of BMU's claims in the Nassau County Action before Justice Timothy Driscoll from February 29, 2012 to April 24, 2012, following Justice Driscoll's denial of Ferolito's summary judgment motion. On July 5, 2012, after submission of post-trial briefs, the Second Department reversed Justice Driscoll's pretrial denial of Ferolito's summary judgment motion seeking dismissal of BMU's claims. Subsequently, the parties submitted briefs to Justice Driscoll as to whether any issues from the trial remain to be determined. Meanwhile, BMU filed a

"protective" appeal to the New York Court of Appeals. Proceedings in the State Actions also included a First Department decision on July 24, 2012 on four of Ferolito's appeals in the New York County Action. The First Department's decision included rulings upholding Justice Shulman's denial of Ferolito's motion to compel distributions to shareholders due to issues of fact regarding Ferolito's management rights, and reinstating the Ferolito Trust's common-law dissolution claim, which had been dismissed.

D. The Present Motion to Dismiss

Menashi moves to dismiss Ferolito's claims in the Federal Action on various grounds, including (1) failure to state a claim; (2) statute of limitations; (3) failure to plead fraud with sufficient particularity; and (4) basing the amended complaint on privileged information improperly disclosed by an attorney, Nicholas Altimari ("Altimari"), formerly employed by BMU. Alternatively, Menashi moves to dismiss or stay this action based on the *Colorado River* abstention doctrine. Because, as discussed below, the Court agrees that this action should be dismissed based on *Colorado River* abstention, it need not address Menashi's alternative arguments for dismissal.[1]

---

[1] Menashi also requests that the Court "consider" recusing itself because Ferolito, in correspondence to the Court, stated, *inter alia*, that Altimari is the son of former federal district (and Second Circuit Court of Appeals) judge Honorable Frank Altimari, purportedly to curry favor with this Court. Because there is no grounds for recusal, that request is denied. In addition, by letter motion (doc. 27), Ferolito seeks leave to file a sur-reply to Menashi's motion to dismiss, to address a statute-of-limitations argument raised in Menashi's reply papers. Given the Court's determination dismissing the action, the letter motion is denied, and terminated, as moot.

II. <u>DISCUSSION</u>

A. <u>Colorado River Abstention</u>

As the Supreme Court set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and its progeny, a federal court may abstain from exercising jurisdiction over a case where there is pending a parallel state court proceeding *and* certain factors weigh in favor of abstention. *See id.*; *Gen. Reinsurance Corp. v. CIBA-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988). Abstention under *Colorado River* rests on considerations of " '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). For state and federal actions to be parallel, the actions need not be identical. Lawsuits are considered "parallel when substantially the same parties are contemporaneously litigating substantially the same issues in different forums." *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir. 1988) (internal quotation marks omitted); *see Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998); *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988); *see also Tyrer v. City of South Beloit*, 456 F.3d 744, 752 (7th Cir. 2006) (court must determine whether the suits "involve the same parties, arise out of the same facts and raise similar factual and legal issues"). A finding that proceedings are parallel is a necessary prerequisite to the exercise of *Colorado River* abstention. *Dittmer*, 146 F.3d at 118. Where parallel proceedings

exist, a court determines whether to abstain by considering the following factors set forth in *Colorado River* and its progeny: (1) whether either court has exercised jurisdiction over a res or property; (2) the relative convenience of the forums; (3) the order in which jurisdiction was obtained; (4) whether piecemeal litigation may be avoided by abstention; (5) whether state or federal law applies to disposition of the claims; and (6) the ability of the state court to protect the rights of a federal plaintiff. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 21-26 (1983); *Colorado River*, 424 U.S. at 818-19; *Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). No single factor is determinative, and the decision whether to abstain is left to the trial court's sound discretion. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16; *Colorado River*, 424 U.S. at 818-19; *Woodford*, 239 F.3d at 522.

B. Propriety of Colorado River Abstention

    1. Parallel Federal and State Actions

Upon consideration, the Court concludes that the Federal and State Actions are parallel for purposes of *Colorado River* abstention. As Menashi argues, the State Actions, particularly the Derivative Action, arise out of the same core allegations as the Federal Action, namely (1) that beginning in late 2007, Menashi met with Vultaggio and other officials or employees of the Arizona Entities to address and implement a scheme against Ferolito; (2) that Menashi used Ferolito's confidential financial information in a scheme with Vultaggio to defraud Ferolito, for, *inter alia*, Menashi's personal advantage;

and (3) that Menashi and Vultaggio feigned a "cash crunch" to serve as a pretext for depriving Ferolito of millions of dollars in distributions, which Menashi knew that Ferolito needed for personal and business purposes. Menashi is named as a defendant individually in the Derivative Action. The addition of other defendants in that action does not destroy the parallel nature of the cases. *See Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). Ferolito argues that the Federal Action is distinct from the Derivative Action in that the claims there are limited to "Menashi's misuse of his position as 'a board member and the Vultaggio-appointed CEO of BMU,' " Memorandum in Opposition to Defendant's Motion to Dismiss or Stay the Amended Complaint, at 7. By contrast, according to Ferolito, the Federal Action alleges that Menashi obtained Ferolito's confidential financial information through his role as Ferolito's personal financial advisor and accountant, and Ferolito seeks to resolve "Menashi's liability for wrongdoing to Ferolito in his capacity as a fiduciary to Ferolito personally." *Id.* at 8. Notwithstanding Ferolito's arguments, the fact that a new theory of liability is asserted in the Federal Action does not sufficiently differentiate the Federal Action from the Derivative Action. Indeed, the Federal Action appears to be based on the exact same scheme and exact same misuse and disclosure of confidential financial information as the Derivative Action. There does not appear to be any reason why Ferolito cannot assert this theory of recovery against Menashi in the Derivative Action, in which he asserts claims against Menashi both individually and derivatively. *See* N.Y. C.P.L.R. 601(a); *Abrams v.*

*Donati*, 498 N.Y.S.2d 782, 783 (N.Y. 1985); *Baliotti v. Walkes*, 521 N.Y.S.2d 453, 454 (2d Dep't 1987); *Young v. Tabor*, 132 N.Y.S.2d 431, 432 (4th Dep't), *aff'd*, 308 N.Y. 687 (1954). As the Second Circuit has held, "[m]erely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362-63 (2d Cir. 1985); *see Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308 (7th Cir. 1988). Thus, the Court concludes that the actions are parallel for purposes of *Colorado River* abstention.

    2. <u>Analysis of Factors for Determining Whether to Abstain</u>

Upon analyzing the factors under *Colorado River* abstention, the Court concludes that, on balance, there are sufficient grounds for dismissal of the Federal Action.

        a. <u>Exercise of Jurisdiction Over a Res or Property</u>

There is no res or property over which either court has exercised jurisdiction. Such absence favors the retention of federal jurisdiction. *See Woodford*, 239 F.3d at 522.

        b. <u>Convenience of the Forums</u>

The State Actions are pending in New York County and Nassau County, and the Federal Action is pending in the Eastern District of New York. Where, as here, the federal court is just as convenient as the state court, this factor is substantially neutral and favors the retention of federal jurisdiction. *See Village of Westfield, N.Y. v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999).

      c. The Order in Which Jurisdiction Was Obtained

The Federal Action was filed more than one year after the Derivative Action and four years after the original New York County Action. However, this factor does not turn exclusively on the dates when the actions were filed, but on the relative progress of the cases. *See Arkwright–Boston Manufacturers Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985). By comparison, there has been considerably more progress in the State Actions than in the Federal Action. Indeed, the present motion, when made, was the only substantial proceeding in the Federal Action. Comparing the progress of these actions leads the Court to conclude that this factor weighs in favor of abstention.

      d. Avoidance of Piecemeal Litigation

Given that the Federal Action appears to be based on the exact same scheme and exact same misuse and disclosure of confidential financial information as the Derivative Action (as well as the consolidated New York County Action), the federal and state courts would be considering the same issues and will likely hear similar pretrial motions, evidence, and witnesses. Allowing such similar actions to proceed in the federal and state courts under the circumstances would waste judicial resources and invite duplicative efforts. Indeed, as Menashi notes, the state courts have been cognizant of avoiding duplicative proceedings and wasting judicial resources (in light of the overlap between the state actions). For instance, Justice Shulman's order transferring the BCL Action and consolidating it with the New York County Action is one such measure. Moreover, the

possibility exists that the federal and state courts could come to conflicting decisions concerning the same events. This factor weighs heavily in favor of abstention.

### e. Whether State or Federal Law Provides the Applicable Law

The Federal Action arises under diversity and involves only state law claims. This factor weighs in favor of abstention, although not heavily because the state law issues do not appear to be novel or particularly complex. *See Arkwright-Boston Mfrs. Mut. Ins. Co.*, 762 F.2d at 211; *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 193 (E.D.N.Y. 2012).

### f. The Ability of the State Court to Protect the Plaintiff's Rights

The state court can adequately protect Ferolito's rights. Ferolito raises only state law claims against Menashi, all of which can be sufficiently litigated in, and resolved by, the state court. This factor weighs in favor of abstention.

This Court concludes that, on balance, the factors applicable to the circumstances demonstrate that the interests of wise conservation of judicial resources and the comprehensive disposition of litigation weigh sufficiently in favor of abstention. Accordingly, this action is dismissed based on *Colorado River* abstention.

## III. CONCLUSION

For the above reasons, Menashi's motion to dismiss is granted to the extent that this action is dismissed based on *Colorado River* abstention. The Clerk of Court is

directed to close the file.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
      January15, 2013